STATE of Missouri ex rel. HILLEARY AND PARTNERS, LTD., Noah's Ark Restaurants, Inc., Missouri Corporations, Relators,

v.

John J. KELLY, Judge, Division 7, Equity Division of the Circuit Court of St. Louis County, Missouri, Respondent.

No. 33505.

St. Louis Court of Appeals.

Missouri.

Dec. 16, 1969.

Brackman, Copeland, Oetting, Copeland, Walther & Schmidt, Clayton, for relators.

Boyle, Priest, Elliott & Weakley, Edward D. Weakley, St. Louis, Vatterott, Shaffar & Dolan, Charles H. Shaffar, St. Ann, for respondent.

DOERNER, Commissioner.

In this original proceeding relators initially seek to prohibit respondent from exercising jurisdiction over Count II of an amended petition filed in an action pending before the respondent in which Nark, Inc., a corporation, David B. Flavan, Jr., and John Flavan are the plaintiffs and the relators, together with Harry Hilleary, individually and as president of Hilleary and Partners, Ltd., are the defendants.

The essential facts necessary for our determination of the issue presented are these: On or about June 28, 1966, relators Hilleary and Partners, Ltd. (then named Flaming Pit Franchising Corp.), granted the Flavans the exclusive franchise to operate a restaurant or restaurants named "Noah's Ark" within a designated area in St. Charles County, in return for which the Flavans agreed to pay Hilleary and Partners one percent of their gross sales, as defined. The agreement further provided, in part, that the Flavans were to have the right of first refusal on all other "Noah's Ark" restaurants which might be located in the metropolitan St. Louis area and also provided that if Hilleary and Partners sold franchises to others outside that area the Flavans would receive one percent of the gross annual sales of the first five of such restaurants, and one-half of one percent of gross annual sales of the next five franchised restaurants. As authorized by the contract, the Flavans thereafter assigned the franchise agreement to Nark, Inc., a corporation.

On or about June 11, 1968, the plaintiffs filed their verified petition in the Circuit Court of St. Louis County in which, after reciting the terms of the franchise agreement, a copy of which was attached, they alleged that on October 3, 1967, Hilleary and Partners had offered plaintiffs the

right of first refusal on a "Noah's Ark" restaurant to be located in the vicinity of Interstate 55 and Lindbergh Boulevard in St. Louis County, and in addition had offered plaintiffs the right of first refusal to establish a "Noah's Ark" restaurant in Collinsville, Illinois; that plaintiffs exercised their right of first refusal for the establishment of the restaurant in St. Louis County, and timely tendered to Hilleary and Partners the sum of $3750, as provided under their franchise agreement; that Hilleary and Partners returned the $3750 to plaintiffs, together with an attempted termination of the agreement dated June 28, 1966; and that plaintiffs had recently learned that Hilleary and Partners had franchised the construction and operation of a "Noah's Ark" restaurant in Granite City, Illinois, and another at the intersection of Interstate 55 and 255, in St. Louis County. Plaintiffs prayed for the issuance of a restraining order enjoining the relators from franchising or attempting to franchise or entering into any agreement with any person for the franchising of, construction of, operation of, managing of, or owning any "Noah's Ark" restaurants in the metropolitan St. Louis area; for the cancellation of any franchise granted by relators in the same area; and for an order to show cause, and temporary and permanent injunction. The court granted a restraining order as prayed and issued an order to show cause why a temporary injunction should not be granted, returnable on June 18, 1968.

In their return to the order to show cause filed on June 18, 1968 relators agreed, as plaintiffs had alleged, that a franchise had been granted to the Flavans, which contained the terms alleged. Relators pleaded that the agreement dated June 28, 1966 had been modified by the parties by an oral agreement, which was reduced to writing on June 29, 1966 in a letter from Flaming Pit (now Hilleary and Partners) to David Flavan; that by a letter dated May 23, 1968 Hilleary and Partners notified the Flavans that the latter were in default as to certain provisions of the contract, and that unless such defaults were cured within 21 days Hilleary and Partners would declare the franchise agreement terminated, all as provided in the franchise agreement; that the plaintiffs had not cured all of said defaults, and Hilleary and Partners were entitled to declare the franchise terminated; and that any rights plaintiffs might have had under the agreement had been extinguished on or before June 15, 1968.

Thereafter, on June 28, 1968, plaintiffs amended their petition by various interlineations by which they alleged that Hilleary and Partners' letter of May 23, 1968 had threatened termination of the license agreement; that Hilleary and Partners had in open court announced their intention to further attempt termination of said agreement; that " * * * Said Agreement and the terms thereof are just and reasonable and the consideration therefor is adequate * * *"; that "Plaintiffs have at all times from and after June 28, 1966 duly performed all covenants and conditions of the contract on their part required and are willing and able to continue to perform such covenants and conditions * * *"; and that " * * * If defendants are permitted to cancel said Agreement, the plaintiffs will suffer irreparable harm. * * *" By the same interlineation plaintiffs amended the prayer of their petition to ask that Hilleary and Partners be enjoined from terminating the franchise agreement and from granting franchises for "Noah's Ark" restaurants in the metropolitan St. Louis area without first offering the same to plaintiffs for their acceptance or rejection. On the same day plaintiffs filed their reply to defendants' return to the order to show cause, in which plaintiffs admitted the allegation in defendants' return that the license agreement had been modified by defendants' letter of June 28, 1966; reaffirmed the reasonableness of the licensing agreement; and renewed their prayer that defendants be enjoined from cancelling that agreement and from at-

tempting to grant other franchises in the metropolitan St. Louis area without first having offered the same to plaintiffs for their acceptance or rejection.

With the pleadings in that state a hearing on the order to show cause was held on July 15, 16, and 29, 1968. A transcript of the evidence produced is not before us in this proceeding. On July 31, 1968, the respondent judge granted the plaintiffs below a temporary injunction in which he enjoined the relators "* * * from terminating the Agreement between plaintiffs and defendant Hilleary and Partners Ltd., dated June 28, 1966, as amended" and further enjoined the defendants "from the franchising of, construction of, operation of, managing of, leasing of, or owning any Noah's Ark Restaurants in the Metropolitan St. Louis Area similar in nature to that one owned by the plaintiffs without having first offered the locations therefor to the plaintiffs for their acceptance or rejection, in accord with the provisions of the aforesaid Agreement, and said defendants are further enjoined from the execution of any binding contract for the granting of such a franchise, or construction, or managing or owning of such a Noah's Ark Restaurant, said temporary injunction to apply only to the St. Louis Metropolitan Area, * * *" which area the court defined, and excepted from the injunction relators franchising of such a restaurant in Granite City, Illinois.

On October 11, 1968, subsequent to the issuance of the temporary injunction, plaintiffs filed their verified first amended petition, containing three counts. In Count I, in substance, plaintiffs repeated the essential allegations of their original petition, and prayed for the same relief. However, in Count II plaintiffs charged that various "representations" of Hilleary and Partners contained in the licensing agreement were untrue in fact and in law, that numerous provisions of the agreement were a nullity, including that which granted plaintiffs a franchise for their Noah's Ark restaurant,

and that by which Hilleary and Partners retained the right to establish Noah's Ark restaurants at other locations in the metropolitan St. Louis area upon giving plaintiffs the right of first refusal for such locations. In their prayer in Count II plaintiffs asked, among other relief, that the court find that relators had no right to control the licensing or franchising of Noah's Ark restaurants and that defendants be permanently enjoined from granting such licenses and from engaging in competition with plaintiffs in the metropolitan St. Louis area. We are not here concerned with Count III in this proceeding and need not review the allegations contained therein.

Despite the fact that the temporary injunction had been granted on July 31, 1968, two and a half months later, on October 16, 1968, plaintiffs filed their amended reply to relators' return to the order to show cause why the temporary injunction should not be granted. In their amended reply, contrary to their original reply, plaintiffs denied that the franchise agreement had been modified by an oral agreement, which modification had been reduced to writing by defendants' letter of June 29, 1966.

In response to those pleadings of plaintiffs, relators, on October 17, 1968, filed a motion to strike Counts II and III of plaintiffs' first amended petition "for the reason that said Counts fail to state a claim upon which relief can be granted." And on the same day relators filed a motion to strike plaintiffs' amended reply to relators' return to the order to show cause on three grounds: first, that the amended reply was untimely, and that it would be inequitable and unfair to relators to permit plaintiffs to amend after a temporary injunction had been issued on the basis of the pleadings as they stood at the time the temporary injunction was granted; second, that relying on plaintiffs' original reply (in which they had admitted the validity of the modification of the licensing agreement) relators did not present evidence on that

issue, as relators would have done had plaintiffs controverted that issue; and third, that plaintiffs' admission of the validity of the modification in their original reply was a judicial admission, and that the court was without jurisdiction to permit the amendment of plaintiffs' reply after the issuance of the temporary injunction. On February 14, 1969, the respondent judge denied relators' motion to dismiss Counts II and III of plaintiffs' first amended petition, and denied relators' motion to strike plaintiffs' amended reply to relators' return to the order to show cause. Thereupon relators filed their petition in this court and we issued our preliminary rule.

Relators maintain that Counts I and II of plaintiffs' first amended petition are inconsistent in that Count I (formerly their original petition) is based on plaintiffs' allegations that the franchise agreement is valid and binding, whereas in Count II plaintiffs allege that the agreement is invalid and void. Respondent concedes, and we agree, that such is the case and that the counts are inconsistent. Where the parties differ is that relators maintain that the plaintiffs, in seeking and obtaining relief upon the claim in their original petition that the franchise agreement is valid, thereby made an election of their remedies; that the respondent should therefore have sustained relators' motion to dismiss Count II, and erred in overruling it; and that in proceeding to entertain and hear Count II respondent is exceeding his jurisdiction. Respondent, on the other hand, contends that plaintiffs did not make an election of remedies; that under Civil Rules 55.12 and 55.06 V.A.M.R., the plaintiffs may set forth two or more statements of a claim alternately, and that respondent is therefore not acting in excess of his jurisdiction. Thus the narrow issue presented is whether in seeking and obtaining the restraining order and the temporary injunction under the theory pleaded in their original petition that the franchise agreement is valid and binding the plaintiffs made such an election of remedies that they are now precluded from claiming that the franchise agreement is invalid and void.

■■■ Before reaching that issue we must first consider another raised by respondent. As respondent points out, and as we noted in our statement of the facts, relators sought the dismissal of Count II of plaintiffs' first amended petition by a motion in which it was claimed that Count II failed to state a claim on which relief could be granted. If the grounds of relators' motion is read literally and strictly construed it is doubtful that it effectively raised the issue of election of remedy, for looking only to the allegations of Count II it does state a claim for relief, and the matter of an election of remedy is one which ordinarily is required to be affirmatively and specifically raised. Boyd v. Margolin, Mo., 421 S.W.2d 761; Denny v. Guyton, 327 Mo. 1030, 40 S.W.2d 562. As a general rule, a writ of prohibition will not be issued to an inferior court unless the attention of the court whose proceeding it is sought to arrest has been called to the alleged lack or excess of jurisdiction, State ex rel. City of Mansfield v. Crain, Mo.App., 301 S.W.2d 415, but our courts have never recognized this as a hard and fast rule and there are many well recognized exceptions to it. State ex rel. McEntee v. Bright, 224 Mo. 514, 123 S.W. 1057; State ex rel. Missouri Pac. Ry. Co. v. Williams, 221 Mo. 227, 120 S.W. 740. One of such well recognized exceptions is when the return of the respondent judge affirms his jurisdiction or denies that he acted in excess of his jurisdiction, for it follows that it would have been useless for the relator to make his attack in the first instance. State ex rel. Henderson v. Cook, 353 Mo. 272, 182 S.W.2d 292; State ex rel. Missouri Pac. Ry. Co. v. Williams, supra; State ex rel. City of Mansfield v. Crain, supra. In the present case relators did move for the dismissal of Count II, albeit the grounds of election of remedy was not specifically pleaded. However, respond-

ents' return to our preliminary writ would indicate that the legal questions of inconsistency of Counts I and II and of election of remedy were considered at the hearing on relators' motion. Respondent in his return does not assert that such legal questions were raised for the first time in relators' petition for our writ. Rather, he not only denies their correctness, but affirmatively pleads that the pleading of inconsistent claims is permissible under Civil Rules 55.12 and 55.06, V.A.M.R., and that he is not exceeding his jurisdiction in entertaining and proceeding to try Count II of plaintiffs' first amended petition. To quash our preliminary writ because relators' motion to dismiss was not as precise as it might have been would be of no avail to respondent or the plaintiffs in the action pending in his court, and would only result in unnecessary delay, for respondent by his return has clearly indicated what his ruling would be if a more precise motion was then filed. Under these circumstances and the decisions cited we are of the opinion that the substantive issue should be disposed of without further delay. State ex rel. City of Mansfield v. Crain, supra.

■ Our courts have said that, "* * * 'The basic concept of the doctrine of election is that a party shall not be permitted to insist at different times upon the truth of two inconsistent and repugnant positions, according to the promptings of his own interest, as to first affirm and later disaffirm a contract, or the like.' * * *" Davis v. Hauschild, Mo., 243 S. W.2d 956, 959–960; King v. Guy, Mo.App., 297 S.W.2d 617, 622; or, resorting to the vernacular, "* * * As the Scotch law is said to have it, one cannot both approbate and reprobate at one and the same time. * * *" United States Fidelity & Guaranty Co. v. Fidelity Nat. Bank & Trust Co., 232 Mo.App. 412, 109 S.W.2d 47, 49. Based on that doctrine the general rule as stated in a number of cases is that, "It is well settled law where a party has the right to pursue one of two inconsistent

remedies, and he makes his election, and institutes his suit, that in case the action thus begun is prosecuted to final judgment, or the plaintiff has received anything of value under a claim thus asserted, he cannot thereafter pursue another and inconsistent remedy. * * *" Johnson-Brinkman Commission Co. v. Missouri Pac. Ry. Co., 126 Mo. 344, 28 S.W. 870, 872, 26 L. R.A. 840; Cowan v. Young, 282 Mo. 36, 220 S.W. 869; Bell v. Butte Inv. Co., Mo., 250 S.W. 381.

■ Of course, the mere filing of a suit and its dismissal before trial and before the plaintiff has gained, or the defendant has lost, anything thereunder is not such an election of remedies as will bar a subsequent suit by plaintiff on an inconsistent theory. Otto v. Young, 227 Mo. 193, 127 S.W. 9; Marquis v. Pettyjohn, Mo.App., 212 S.W.2d 100. In fact, under Civil Rule 55.12, V.A.M.R., upon the institution of his action a plaintiff may set forth statements of two claims alternatively, even though they are inconsistent, and may pursue such inconsistent claims until in some effective manner he makes an election between such remedies. Did the plaintiffs make such an election in the instant case? We hold that they did. Bottoming their request on their claim that their franchise agreement was valid and binding, and that relators were about to violate its terms, and to terminate it, plaintiffs first sought and obtained a restraining order enjoining the relator from granting a franchise to any other person for a "Noah's Ark" restaurant in the metropolitan St. Louis area, and further enjoining the relators from terminating the agreement. Thereafter, still proceeding on their claim that the contract was valid and binding, plaintiffs sought and the court granted a temporary injunction enjoining the relators from franchising, constructing, operating, managing, leasing, or owning any "Noah's Ark" restaurant in the metropolitan St. Louis area without giving plaintiffs the right of first refusal, and also enjoin-

ing the relators from terminating the agreement. The temporary injunction is still in effect, obviously to plaintiffs' advantage and to relators' disadvantage. Having pursued their original cause of action to the stage where plaintiffs received such relief and benefits, to relators' detriment, we hold that plaintiffs elected their remedy and should not now be allowed to assert a claim directly contrary to the one under which plaintiffs sought and obtained such relief. MacMurray-Judge Architectural Iron Co. v. St. Louis, 138 Mo. 608, 39 S.W. 467. In short, plaintiffs may not both approbate and reprobate as to the validity of the franchise agreement.

Relators also contend that the respondent erred in overruling their motion to strike plaintiffs' amended reply to relators' return to the order to show cause, which amendment was filed two and a half months after respondent had granted plaintiffs a temporary injunction, and ask us to order respondent to strike plaintiffs' amended reply. Generally, prohibition is a preventive remedy, and cannot be used, as a substitute for an appeal, to undo or annul erroneous judicial proceedings which have already been accomplished. State ex rel. Boll v. Weinstein, 365 Mo. 1179, 295 S.W. 2d 62. If respondent erred, as relators claim, they have an adequate remedy in an appeal should one become necessary.

Our preliminary rule in prohibition is made absolute as to any jurisdiction over Count II of plaintiffs' first amended petition.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, preliminary rule in prohibition made absolute as to jurisdiction over Count II of plaintiffs' first amended petition.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.