**GROTE MEAT COMPANY,**
**Plaintiff-Appellant,**

v.

**Jerome GOLDENBERG,**
**Defendant-Respondent.**

No. 52387.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 7, 1987.

Rehearing Denied Sept. 2, 1987.

Curtis, Bamburg, Oetting, Brackman & Crossen, Kenneth J. Heinz, Clayton, for plaintiff-appellant.

Newman, Goldfarb, Freyman & Stevens, P.C., Morton R. Newman and Monnye R. Gross, Clayton, for defendant-respondent.

KAROHL, Judge.

Plaintiff-vendor at wholesale of meat products sued defendant Atlas Foods, Inc. (Atlas), a Missouri corporation, and defendant Jerome B. Goldenberg to collect $28,-520.57 representing the unpaid purchase price for the sale of cattle and cattle parts. The identity of the purchaser is the disputed issue. Plaintiff claims it sold to defendant Goldenberg or in the alternative to Atlas which was the alter ego of Goldenberg. Defendant Goldenberg claims that plaintiff sold to Atlas only. Count I of plaintiff's first amended petition alleges a sale contract to both defendants, Goldenberg and Atlas, as purchasers. Count II, for the same sum, alleges an account stated against both defendants. Count III, pleaded in the alternative, and for the same sum, alleges Goldenberg is personally obligated for the purchase price because Atlas Foods Inc. was operated by him as his alter ego and the corporation never had any genuine or separate existence in its relations with defendant. A fourth Count was not tried. The original petition stated a cause of action only against Atlas Foods Inc. Because of an intervening involuntary bankruptcy of Atlas Foods Inc., plaintiff dismissed its claims against the corporation.

In a court tried case the court entered findings of fact, conclusions of law and judgment for defendant Goldenberg. The trial court rejected plaintiff's theories that Goldenberg was liable either as an undisclosed principal or as the alter ego of Atlas Foods Inc.

For purposes of this opinion the following facts are not in dispute. Plaintiff corporation engaged in the wholesale meat supply business from 1948 forward. For some time prior to May, 1983, plaintiff sold meat products to John Volz Packing Company, a Missouri corporation (Volz Co.). In May, 1983, Atlas Foods Inc. purchased the inventory of Volz Co. It did not purchase Volz Co. It also acquired the consent of Volz Co. to register and use the fictitious name of Volz Foods. Thereafter, John Volz became an employee of Atlas. Defendant Goldenberg and his wife purchased the Volz Company building at the same time Atlas bought the inventory of Volz Co.

According to Goldenberg and the document evidence, Atlas Catalog Inc. was

formed as a Missouri corporation in 1979. It remained inactive until April or May, 1983, when it was renamed Atlas Foods Inc. Goldenberg was the sole share holder and president. The initial assets of Atlas Foods Inc., were $3,000 worth of inventory purchased from Volz, $60,000 in the form of inventory contributed by Sanford Kusmer, and $30,000 as consideration paid for 15,000 shares of $1 par common stock and a loan from Goldenberg of $30,000. The evidence of this financial position was presented to the trial court by the testimony of defendant Goldenberg and from the corporate records of Atlas. In answer to interrogatories defendant Goldenberg said, "Gerry Goldenberg initially invested $30,000 in cash and loaned an additional $30,000 to the corporation. This was subsequently changed in July of '83 so as to be shown as a loan." On May 2, 1983 defendant Goldenberg and wife, as the sole directors of Atlas, conducted the following business: "RESOLVED, THAT JEROME B. GOLDENBERG CONTRIBUTE TO THE CORPORATION AN AMOUNT EQUAL TO THIRTY THOUSAND ($30,000) WHICH SHALL BE IN EXCHANGE FOR 14,999 SHARES OF THE ONE DOLLAR ($1.00) PAR VALUE COMMON CAPITAL STOCK OF THE CORPORATION. FURTHER RESOLVED, that the corporation be and it is hereby authorized and directed to borrow the sum of thirty thousand ($30,000) from Jerome B. Goldenberg, according to the terms and conditions set forth in the Promissory Note attached hereto and by this reference made a part hereof; ..." The inquiry of defendant Goldenberg on direct examination during trial relative to the investment and loan to the corporation was as follows:

Q. And were you the sole shareholder?

A. Yes.

Q. How many shares of stock did you have?

A. I believe I had one share.

Q. Okay. And what did you pay for that one share?

A. I wasn't quite sure. I thought we were paying $30,000 for the one share.

Q. Okay. And did you in fact pay that $30,000?

A. According to my knowledge, yes.

Defendant Goldenberg personally borrowed $60,000 from Mercantile Bank to invest and loan to Atlas. His personal loan from the bank was secured by a UCC security agreement which placed a lien on the inventory, fixtures, and receivables of Atlas. The loans were guaranteed by Goldenberg and his wife.

Goldenberg and wife purchased and rented their Volz building to Atlas and Goldenberg was employed by Atlas at a salary of $750 per month. He also received from Atlas an additional $400 per month. The additional $400 per month was part of an agreement with Kusmer and was payable until letters of credit arranged by Goldenberg on behalf of Atlas were terminated. Goldenberg described this $400 as "salary".

On July 13, 1983, Atlas paid Goldenberg $60,000. The next day, Atlas Inc. borrowed $60,000 from Mercantile Bank. The bank received a security agreement from Atlas similar to the agreement made by Goldenberg. The Atlas loan was required to repay Goldenberg who in turn repaid the bank on his personal borrowing. This was done on the advice of accountants serving Goldenberg. The accountant gave that advice in the belief that the capital contribution by Goldenberg for shares of stock was $500, not $30,000. The accountant testified that he would not have so advised defendant Goldenberg if $30,000 or $60,000 was a capital contribution as opposed to a loan. The accountant had no knowledge whether Atlas Inc. had ever authorized loans from Mercantile by an act of share holders or directors. The bank loans to Goldenberg and Atlas loans were rearranged before plaintiff sold the products for which the price was not paid.

Other evidence supports a finding that Atlas functioned as a corporation in its relations with third parties to this lawsuit. It banked in that form, had employees and utilized withholding tax numbers, leased property in that name, and filed income tax forms as a corporation.

Bruce Grote recalled a meeting in July, 1983, with John Volz and defendant Goldenberg. Bruce Grote testified that he was told that Goldenberg had purchased the Volz business and would purchase meat products from plaintiff. He claimed that he was given no information that Atlas Foods had purchased Volz or that the corporation would be a purchaser. Bruce Grote testified Goldenberg "basically told me that he had been buying meat products from Spencer Foods and I think Iowa Beef, other packers, Snider Packing Company, and that—and he was a wealthy man and that I wouldn't have to do—worry about any problems as far as credit was concerned, that he was an honorable person and his word was good." Goldenberg did not tell Bruce that Goldenberg was an employee of Atlas Foods Inc. Nothing was said at the meeting about Atlas Foods Inc.

The first two sales from Grote to Goldenberg, or Atlas, or both, occurred on August 4, 1983. The sales were invoiced by Grote to "IN ACCOUNT WITH: Volz." Payment was made on these invoices on August 19, 1984 by a check drawn on Mercantile Bank by "Atlas Foods Inc., d/b/a Volz Foods." Plaintiff also delivered meat products invoiced to "Volz" on August 5, August 12, August 15, August 17, and August 18 before the first payment was received. On August 26, by a similar check plaintiff received payment for the August 5–August 15 invoices. On September 1, plaintiff was paid by a similar check for the August 17 and August 18 invoices. Between August 19 and September 12 plaintiff delivered meat products and in every invoice described "Volz" as the buyer. No deliveries were made after September 12, 1983. On that date plaintiff received payment for the August 19 through August 26 invoices. The subject matter of this lawsuit is the unpaid invoices for deliveries on August 30 through September 12, 1983. The evidence supports and the court found that the unpaid total sum was $28,520.57.

The findings and conclusions of the trial court which are significant for this appeal are:

1. Atlas/Volz [the corporation Atlas Foods, Inc.] was capitalized by means of a contribution of $60,000 of inventory from Sanford Kusmer and $60,000 in cash from Jerome Goldenberg, said money being borrowed by Goldenberg from Mercantile Trust Company in April, 1983. On or about July 14, 1983, prior to Atlas/Volz having any business relationship with Grote Meat Company, and on the advice of an accountant Goldenberg restructured the loan to the company by making it a corporate obligation to Mercantile Trust Company rather than a personal obligation. "After these transactions, all of which occurred on or about the same day, Atlas Foods Inc. still had the same operating capital in its account as it did before the transactions were completed".

2. The actual day to day operation of the business was handled mainly by Sanford Kusmer and Jack Volz, both of whom had previous meat packing company experience. Goldenberg did some office work, but not having any experience in the meat packing operation, did not take part in any sales, and did very little, if any, ordering of product from meat suppliers.

3. It was at the suggestion of Jack Volz who had previously done business with Grote Meat Co., that Atlas Foods began to purchase cattle and cattle parts from Grote in late July or early August, 1983. There was no indication that Goldenberg indicated he would be personally responsible nor personally guarantee the obligations of Atlas Foods to Grote Meat Co. or any other supplier.

4. Grote Meat Co. had received payment from Atlas Foods Inc., d/b/a Volz Foods, in the total amount of $42,903.46 as payment on a portion of deliveries made through September 12, 1983. These payments were made by check drawn on the account of Atlas Foods Inc., d/b/a Volz Foods, and were clearly marked as such.

5. After receiving the first two Atlas Foods Inc., d/b/a Volz Foods checks in August, 1983, Grote Meat Co. continued to deliver products to Atlas Foods Inc.

6. None of plaintiff's invoices were directed to Jerome Goldenberg personally, but all

were directed to Volz or to Atlas Foods Inc., d/b/a Volz Foods.

7. "Grote Meat Company at the time it delivered the meat products for which it is now making claim for payment knew, or should have known, that it was selling its products to Atlas Foods Inc. since it had accepted and deposited a number of checks from the corporation in payment of invoices through August 15, 1983."

8. "In addition, as previously noted, the plaintiff's original suit was only against a corporation and is clear admission that it knew it was dealing solely with the corporation, not its president as an individual. Plaintiff corporation knew the identity of the entity which was liable for the deliveries in question and plaintiff can not now be allowed to change its position merely because the debtor corporation became insolvent."

9. The facts in the case do not support the "alter ego" theory. "There is no significant evidence to show that Jerome Goldenberg was using the corporation to perpetuate injustice or to accomplish an unlawful purpose. If the purpose of the corporate existence is legal, fair and equitable and its use is not to accomplish an improper or unlawful purpose, then the corporation will not be found to be the alter ego of an individual. This court concludes that the plaintiff, who had the burden of proof, did not establish any unlawful or improper purpose as to this corporation, Atlas Foods Inc., nor did the plaintiff prove that the corporate entity was being used as a subterfuge in this cause."

We review the claims of error assigned in a court tried case according to Rule 73.01 as interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Plaintiff appellant claims the court erred in its findings and conclusion that defendant Jerome Goldenberg was not liable on the account as the agent of an undisclosed principal, because: (1) Defendant Goldenberg did not disclose his agency or the identity of his principal at the time the contracts were made, but rather indicated that his word and wealth were behind the contracts; (2) Payments made by checks

drawn by Atlas Foods Inc. did not constitute a disclosure of a principal-agency relationship and did not rectify Goldenberg's failure to disclose his agency; and, (3) Plaintiff's initial petition directed only against Atlas Foods Inc. constituted neither an admission that it knew of defendant Goldenberg's agency or the identity of his principal at the time the contracts were made and was not a binding election of remedy. Plaintiff also claims the court erred in not finding defendant Goldenberg liable for the balance due as the "alter ego" of Atlas Foods Inc. because on the basis of defendant's evidence, defendant Goldenberg dominated Atlas Foods Inc., used its existence as a subterfuge to perpetuate injustice and accomplish an unlawful purpose in defrauding creditors and because defendant Goldenberg impaired the capital of the corporation by unlawful withdrawals so that he could use the goods purchased from plaintiff to satisfy debts on which he was personally liable and under such circumstances that the corporate existence must be disregarded.

We reverse and remand with direction that the trial court enter judgment for the plaintiff and against defendant Jerome Goldenberg for the unpaid balance with interest and costs. We find that the judgment of the trial court is unsupported by substantial evidence, against the weight of the evidence and erroneously declares and applies the appropriate law.

█ We first consider the liability of defendant Goldenberg as a agent of an undisclosed principal. The principles governing the liability of an agent who acts for an undisclosed principal were succinctly stated in *David v. Shippy*, 684 S.W.2d 586, 587–88 (Mo.App.1985), as follows:

It is a general rule that where one who is in fact the agent for another makes a contract with the third party without disclosing the fact of agency, or if he discloses such fact without disclosing the identity of his principal, he will be individually bound by the contract and the third party may hold the agent or the undisclosed principal at this election.

Additional authorities for this proposition, including Restatement (Second) of Agency Sections 320, 321 and 322 (1958) are cited in *David v. Shippy. Id.* at 588. "To be relieved of personal liability, it is not enough for the agent to disclose or for the third party to know the agent is acting for another. A legal encyclopedia states: It is not the third person's duty to seek out the identity of the principal; rather, the duty to disclose the identity of the principal is on the agent. The disclosure of an agency is not complete for the purpose of relieving the agent from personal liability unless it embraces the name of the principal; without that, the party dealing with the agent may understand that he intended to pledge his personal liability and responsibility in support of the contract and for its performance." *Id.* at 588.

Prior to selling product to defendant Goldenberg or Atlas, or both, Bruce Grote met with John Volz and defendant Goldenberg. There is no dispute that the meeting occurred. Bruce Grote testified nothing was said at the meeting about Atlas Foods Inc. On the contrary he testified that Goldenberg told him he would be buying meat products, he was a wealthy man, he was an honorable person and his word was good and not to worry about any problems as for as credit was concerned. John Volz and defendant Goldenberg testified about the meeting, but gave no contrary testimony to rebut this evidence. In the face of this evidence the trial court found "there was no indication that Goldenberg indicated he would be personally responsible nor personally guarantee the obligations of Atlas Foods to Grote Meat Company or any other supplier." There was no evidence of a personal guarantee, but there clearly was unrebutted evidence of personal responsibility. Of equal importance the duty to disclose and the risk for failure to disclose agency falls upon defendant Goldenberg. Missouri law does not require a vendor to ascertain the agency prior to the contract; the agent must affirmatively disclose the agency and his principal, *Rankin v. Vest*, 13 S.W.2d 1095, 1096 (Mo.App.1929), and individual liability will be found if, "at the time of making such contract, he fails to disclose his agency and the identity of his principal." *Lange v. Baker*, 377 S.W.2d 5, 9 (Mo.App.1964). The burden of proof is on the agent to show disclosure. *Banjo v. Wacker*, 251 S.W. 456, 458 (Mo.App.1923).

■ Defendant Goldenberg argued and the trial court found that two payments made on August 19, 1983 and August 26, 1983 were made by checks drawn on the account of Atlas Foods Inc., d/b/a Volz for deliveries made between August 4 and August 15, 1983 constituted disclosure of agency. For that reason the court found that plaintiff is not entitled to recover on the unpaid invoices for deliveries from August 30 to September 12, 1983. "It is, therefore, not enough that the other party has the means of ascertaining the name of the principal; the agent must either bring to him actual knowledge, or, what is the same thing, that which to a reasonable man is equivalent to knowledge or the agent will be bound." *David v. Shippy*, 684 S.W.2d at 588, quoting *Stevens v. Graf*, 358 Mich. 122, 99 N.W.2d 356, 359 (banc 1959). It is not sufficient to disclose facts and circumstances which would, if followed by inquiry, disclose the fact of agency and the identity of the principal. *Mawer-Gulden-Annis Inc. v. Brazilain*, 199 N.E.2d 222, 225 (Ill.App.1964). Given the duty of defendant Goldenberg as an agent to affirmatively disclose agency and the absence of an obligation to inquire we find that the employment of a corporate check in payment for deliveries was neither notice nor the equivalent of notice of the identity of the principal. It has been held that a corporate check on an account opened by an individual who did not disclose his agency or the identity of his corporate principal will not charge the third party with the required actual knowledge of the agent-principal relationship. *Tarolli Lumber Company v. Andreassi*, 59 A.D.2d 1011, 399 N.Y.S.2d 739, 740 (1977); *Ardwin v. Englert*, 81 A.D.2d 960, 439 N.Y.S.2d 720, 721 (1981). The checks in themselves indicate only that Atlas Foods Inc. was making payment on behalf of "Volz." When balancing the duty of defendant Goldenberg as an agent to notify against the possibility

of notice of an agency relationship we hold that the checks in themselves do not constitute notice of the relationship. This is especially valid on the present facts which include evidence of defendant Goldenberg's statements of personal wealth and honor at the meeting before sales took place. In the present case there is no indication that the corporate authorship of the payment checks was ever noticed by plaintiff or its employees as an indication of identity of the buyer. The arrangements made at the meeting before sales were for sales to Goldenberg as the purchaser of Volz, not with Atlas Foods Inc. The trial court erred in shifting the burden of proof on the issue of notice to plaintiff.

▇▇▇ The trial court considered and relied on the position of defendant Goldenberg that the original lawsuit of the plaintiff was filed only against the corporation. The court found this to be a "clear admission that it [plaintiff] knew it was dealing solely with the corporation, not its president as an individual." This finding is also erroneous as a matter of law. Bruce Grote testified that the first knowledge his company had of the existence and participation of Atlas Foods Inc., occurred long after all of the sales were made. This occurred when plaintiff received notice that Atlas Foods Inc. was in bankruptcy. Even on defendant Goldenberg's theory Atlas Foods Inc. was a principal. Plaintiff was entitled to recover from Atlas Foods Inc., as principal and the original lawsuit was an attempt to do so. The institution of the suit was not a conclusive and irrevocable election of remedies. *Hart v. Midkiff,* 321 S.W.2d 500, 505 (Mo.1959). *State ex rel. Hilleary and Partners v. Kelly,* 448 S.W.2d 926, 931 (Mo.App.1969). Moreover, an election of remedies is not binding until there has been a gain by the plaintiff and a loss by the defendant. *Hilleary,* 448 S.W.2d at 931. An attempt to recover from one or more defendants does not constitute an admission that others may not also be liable on the debt. In response to the position of defendant Goldenberg and the trial court, plaintiff has argued and the record shows that in answer to the original petition of the plaintiff against Atlas Foods only, de-

fendant Jerome Goldenberg voluntarily responded and filed an answer in which he described himself as "Jerome B. Goldenberg, d/b/a Volz Foods, Volz Packing Co. and Goldenberg Properties." We also note that the answer of defendant Goldenberg to the amended petition in which he is a named defendant does not raise an election of remedies as an affirmative defense. *See, Boyd v. Margolin,* 421 S.W.2d 761, 768 (Mo.1967). Absent an affirmative defense pleading this issue was not properly before the court. Rule 55.08; *Detling v. Edelbrock,* 671 S.W.2d 265, 271 (Mo. banc 1984). The trial court erroneously treated an election of remedies as an admission. This ignores plaintiff's right to recover from either the principal or the agent of an undisclosed principal. On that basis the original petition was not an admission that defendant Jerome Goldenberg was not individually liable.

▇▇▇ We also find plaintiff was entitled to recover from defendant Goldenberg on the theory that Goldenberg used Atlas Foods Inc. as an alter ego and, in the alternative, is individually liable on that theory. Courts will disregard the existence of a corporate entity when the plaintiff shows: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice *in respect to the transaction attacked* so that the corporate entity *as to this transaction* had at the time no separate mind, will or existence of its own; and (2) such control must have used by defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and (3) the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. *Collet v. American National Stores Inc.,* 708 S.W.2d 273, 284 (Mo.App. 1986).

The source of the error of the trial court is a finding of fact that "on or about July 14, 1983, prior to Atlas/Volz having any business relationship with Grote Meat Company, and on the advice of his CPA, Dan

Bindler, Jerome Goldenberg restructured the loan to the company by making a corporate obligation to Mercantile Trust Company rather than his personal obligation. He did this by withdrawing $60,000 from Atlas Foods Inc. and used that to pay Mercantile Trust Company the $60,000 that he had originally borrowed from it. Mercantile Trust Company then loaned Atlas Foods Inc., $60,000 as evidenced by the note dated July 14, 1983 (plaintiff's exhibit "41") a copy of which is attached hereto. After these transactions, all of which occurred on or about the same day, Atlas Foods Inc. still had the same operating capital in its account as it did before the transactions were completed."

As a matter of fact and as a matter of law, this finding is erroneous. Prior to the restructuring of the financing the capitalization of Atlas Foods Inc. included $15,000 for 15,000 shares of $1.00 par stock and $15,000 of earned surplus because defendant Goldenberg paid $30,000 for the stock. It also owed defendant Goldenberg $30,000. After the refinancing the capitalization was not the same. After the refinancing the corporation had no capital account and was $60,000 in debt to Mercantile Trust Company. The difference is significant because the capitalization of the company is subject to the claims of all creditors including plaintiff before the rights of share holders. Before the refinancing there was $30,000 in the capitalization of Atlas Foods Inc. available to creditors. After the refinancing there was no capitalization available to creditors. The refinancing was therefore, in relation to the claim of plaintiff as a creditor, a wrong which violated numerous statutory duties and was unjust in contravention of plaintiff's legal rights.

■ Under Missouri statutes directors of corporations are liable for wrongful withdrawals. Section 351.345 RSMo 1978. Shareholders are liable to creditors for the purchase price of their stock. Section 351.-275 RSMo 1978. Plaintiff's claim in the present case is for less than the $30,000 withdrawn by defendant Goldenberg as a shareholder without any consideration to Atlas Foods Inc. or its creditors. Courts

will disregard the existence of a corporate entity when it is operated while undercapitalized. *Collett v. American National Stores, Inc.,* 708 S.W.2d at 286–287. Under the present facts before any sales were made by plaintiff to defendant Goldenberg, or Atlas Foods Inc. or both, the capital structure of the corporation was, by the testimony of defendant Goldenberg, all debt and no asset. It was totally under capitalized during the entire period of the transactions. All items of asset were balanced by equal items of debt and there was no capital account unless it was the $30,000 paid in, but withdrawn by defendant Goldenberg for the only stock issued by the company. The withdrawal of $30,000 by defendant Goldenberg from the capital account, created when he purchased his stock, violated Section 351.210 RSMo 1978. Nor was the corporation authorized to repurchase its shares because at the time of the restructuring, by so doing, its net assets were reduced below its stated capital. Section 351.390 RSMo 1978. These transactions constituted complete domination, not only of finances, but of policy and business practice in respect to the transaction under attack. It makes no difference that as to persons other than plaintiff the corporation appeared to be a regular corporation. The absence of the stated capital occurred by reason of control by defendant Goldenberg and his breach of duty which proximately caused the unjust loss complained of in this lawsuit. Plaintiff was entitled as a creditor to benefits of the stated capital in preference to defendant Goldenberg as a shareholder. The trial court equated "operating capital" with stated capital (Section 351.390 RSMo 1978) in approving the refinancing. This led the court to err in finding "[t]here is no significant evidence to show that Jerome Goldenberg was using the corporation to perpetuate injustice or to accomplish an unlawful purpose." The refinancing was a misuse of the corporation for an unlawful purpose in relation to plaintiff and other creditors. Plaintiff's evidence consisting of the corporate records and the testimony of Jerome Goldenberg conclusively established an unlawful and improper use of the corporation

with regard to plaintiff's claim as a creditor.

We reverse and remand to the trial court to enter judgment in favor of plaintiff and against defendant Jerome Goldenberg for the unpaid balance supported by the evidence with interest and costs. Our holding that plaintiff's appeal is meritorious disposes of defendant's motion for damages for frivolous appeal.

PUDLOWSKI, P.J., and CRANDALL, J., concur.