**CENTRAL MISSOURI PROFESSIONAL SERVICES, INC., Respondent,**

v.

**Lowell T. SHOEMAKER, A.I.A. and Affhouse, L.L.C., Appellants.**

**No. WD 60650.**

Missouri Court of Appeals, Western District.

Jan. 7, 2003.

Mark Anthony Richardson, Jefferson City, MO, for Appellant.

Michael G. Berry, Jefferson City, MO, for Respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH, and RONALD R. HOLLIGER, JJ.

JAMES M. SMART, JR., Judge.

Lowell Shoemaker appeals the trial court's judgment against him and in favor of Central Missouri Professional Services in Central's collection action against Shoemaker for $5,864.00.

**Factual and Procedural Background**

Lowell Shoemaker, an architect, was hired by Affhouse to work on a land development project in Jefferson City, Missouri. In September 1999, Shoemaker contacted Central Missouri Professional Services about providing engineering and surveying services for the project. Central submitted a written proposal to Shoemaker in October 1999. About a week later, Shoemaker orally agreed that Central should proceed with the work outlined in the proposal. Central thereafter completed the work. The work was done in two phases. The first phase consisted of a topographic survey and utility information and was completed in late 1999. Billing for phase one in the amount of $5,864.00 was sent to Shoemaker on January 5, 2000. On February 15, 2000, Shoemaker called Central and requested that all bills be sent directly to the owner/developer, Affhouse. All future bills were submitted to Affhouse in accordance with Shoemaker's instructions.

Central sued Shoemaker and Affhouse ("Developer") for money owed them for survey and engineering work. The total amount sought was $10,554.00.

Sometime between the filing of the original petition for collection in December 2000 and the first court hearing, Developer entered into a settlement agreement with Central for the full amount due on the contract. Central received one payment from Developer pursuant to the agreement, but the second check for payment was drawn on an account with insufficient funds. Central filed a motion to enforce the settlement agreement in June 2001. In the meantime, Central's claims against Shoemaker remained pending.

On July 20, Central's motion to enforce the settlement agreement came before the court. The court entered judgment against Developer. The court found that Developer entered into a settlement agreement with Central, whereby Developer agreed to satisfy the principal amount of $10,554.00 in five monthly installments and that Developer had made one such monthly installment. The court ordered Developer to pay the remaining principal balance of $8,443.20, plus statutory interest. The cause was continued to August 21, 2001, for further proceedings with regard to the claims against Shoemaker.

The trial court ultimately entered judgment against Shoemaker for $5,864.00, the amount for phase one. This appeal involves only the judgment entered against Shoemaker.

**Point on Appeal**

In his single point on appeal, Shoemaker asserts that the trial court erred in granting judgment against him because there was insufficient evidence of an oral agreement in that there was "no mutuality of agreement." Because he made it clear to Central that he was an architect and not the developer of the project, Shoemaker contends, there was no binding oral contract between Central and him.

**Standard of Review**

Review of this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Leo's Enters., Inc. v. Morgan*, 767 S.W.2d 375, 376 (Mo.App.1989). "The judgment may be

set aside only if it is unsupported by substantial evidence, is against the weight of the evidence, erroneously declares the law or erroneously applies the law." *Id.* No detailed findings of fact were requested or made; thus, all fact issues are considered to have been found in accordance with the result reached. Rule 73.01; *Crawford v. Washington,* 872 S.W.2d 140, 141(Mo.App.1994). The judgment will be affirmed if it properly could have been reached on any reasonable theory. *David v. Shippy,* 684 S.W.2d 586, 587 (Mo.App. 1985).

### Failure to Disclose Existence of Principal–Agent Relationship

Shoemaker contends that there was insufficient evidence to establish that he entered into a binding oral contract with Central. He asserts that there was no basis for holding him liable for the phase one billing because Central knew the owner/developer was someone other than Shoemaker as early as November or December. Central argues that whether or not Central was aware that someone other than Shoemaker was the owner/developer is irrelevant. The relevant inquiry, says Central, is whether Shoemaker, when he told Central to proceed on the project in accordance with their proposal, was acting as an agent on behalf of an undisclosed or a partially disclosed principal.

Shoemaker's claim embodies two issues. The first issue is whether Shoemaker's verbal acceptance of Central's proposal created an oral contract binding Shoemaker. Second, because Shoemaker may be liable if the principal was not disclosed, it must be determined whether and when the identity of the principal Developer (Affhouse) was disclosed to Central.

As to question one, "[i]t is a well-settled rule of law that a written offer may be orally accepted. The result is an oral

contract embodying the terms of the writing." *Moore v. Kuehn,* 602 S.W.2d 713, 718 (Mo.App.1980). "Although a written contract is not signed by one or both of the parties, the acceptance by one of the performance by the other gives validity to the instrument and imposes on the acceptor the obligations provided by the contract." *Hahn v. Forest Hills Constr. Co.,* 334 S.W.2d 383, 385–86 (Mo.App.1960).

In *Moore v. Kuehn,* after receiving a written proposal for various repairs including the repair of a roof, Kuehn told Moore, "The roof ought to be fixed, so get on it." Kuehn, for various reasons, though, never signed the proposal. *Moore,* 602 S.W.2d at 718. Based on Kuehn's verbal instruction to Moore, the court found that an express oral contract existed. The court noted that the only offer made to Kuehn at that point, and the only offer to which his acceptance could conceivably have had reference, was Moore's proposal. The terms of that writing, therefore, "necessarily controlled the oral contract established at that point." *Id.*

Shoemaker claims that there was no oral contract here because there was no "mutuality of agreement" or "meeting of the minds" between them. "The existence of a contract necessitates a 'meeting of the minds' which the court determines by looking to the intention of the parties as expressed or manifested in their words or acts." *Gateway Exteriors, Inc. v. Suntide Homes, Inc.,* 882 S.W.2d 275, 279 (Mo.App. 1994).

Shoemaker contends that there was insufficient evidence that he personally entered into an agreement with Central for the surveying/engineering work. The record shows, however, that in September of 1999 Shoemaker personally contacted Central about providing engineering and surveying services associated with the project

for which Shoemaker had been hired by Developer. Central submitted a written proposal to Shoemaker in October 1999. About a week later, Shoemaker, without disclosing that he was acting as agent in behalf of another, orally agreed that Central should proceed with the work outlined in the proposal. After receiving the go-ahead from Shoemaker, Central completed the work. There is no claim by either Shoemaker or Developer that the survey and engineering work was done without authorization or that it was not done to their satisfaction.

Central's representative at the hearings, Mr. Bates, testified that within a week of submitting the proposal to Shoemaker, he received verbal authorization from Shoemaker to go ahead with the job as outlined in the proposal. His credibility was a matter for the trial court. *Crawford*, 872 S.W.2d at 142. We find no error in the trial court's determination that a binding oral contract existed. An oral contract was established between the parties.

■ Shoemaker also contends that he cannot personally be held liable for the phase one billing because Central knew the owner/developer was someone other than Shoemaker as early as November or December of 2000. We agree with Central that whether or not Central was aware that someone other than Shoemaker was the owner/developer is irrelevant. The relevant inquiry is whether Shoemaker, when he told Central to proceed on the project in accordance with their proposal, was acting as an agent on behalf of an undisclosed principal.

Generally, the law with regard to an undisclosed principal states:

> One who acts as agent for another in making a contract is individually liable thereon if, at the time of making the contract, he or she fails to disclose his agency and the identity of his principal. 3 AM.JUR.2D, *Agency* § 313 (2002).

■ The general rule in Missouri with respect to agent liability is "that one who, as an agent for another, enters into a contract with a third party without disclosing his agent status, or discloses his agent status without disclosing *the identity of his principal,* can be held liable on the contract at the third party's election." *Corporate Interiors, Inc. v. Randazzo,* 921 S.W.2d 124, 126–27 (Mo.App.1996) (citing *David v. Shippy,* 684 S.W.2d 586, 587–88 (Mo.App.1985)) (emphasis added). *See also Grote Meat Co. v. Goldenberg,* 735 S.W.2d 379, 384–85 (Mo.App.1987); *Fairbanks v. Chambers,* 665 S.W.2d 33, 39 (Mo.App.1984).

■ It is the agent's duty to inform the third party not only that he or she is acting as agent, but also of the actual identity of the principal in order to avoid liability; "it is not enough for the agent to disclose or for the third party to know the agent is acting for another." *Corporate Interiors, Inc.,* 921 S.W.2d at 127. The third party's ability to discover the name of the principal is also insufficient to discharge the agent's liability. *Id.* "It is not sufficient to disclose facts and circumstances which would, if followed by inquiry, disclose the fact of agency and the identity of the principal." *Grote Meat Co.,* 735 S.W.2d at 385. The court in *David v. Shippy* explained:

> It is not the third person's duty to seek out the identity of the principal; rather, the duty to disclose the identity of the principal is on the agent. The disclosure of an agency is not complete for the purpose of relieving the agent from personal liability unless it embraces the name of the principal; without that, the party dealing with the agent may understand that he intended to pledge his

personal liability and responsibility in support of the contract and for its performance.

684 S.W.2d at 588 (quoting 3 Am.Jur.2d Agency § 320 (1962)).

 Not only must the agent inform the third party of the actual identity of the principal in order to obtain protection from personal liability, but the agent must also disclose the principal's identity to the third party "*at the time the transaction is being conducted.*" *Crawford,* 872 S.W.2d at 142 (emphasis added). The burden of proof is on the agent to show disclosure. *Grote Meat Co.,* 735 S.W.2d at 385. The determination of whether there was disclosure rests with the factfinder:

> [W]hether the fact of the agency and the name of the principal were disclosed or known to the third party so as to protect the agent from personal liability on the transaction *is a question of fact.*

3 Am.Jur.2d *Agency* § 353 (2002)(emphasis added).

Mike Bates of Central testified at trial that, while he may have at some point in the fall of 1999 become aware of the identity of the developer, he did not think that he knew it at the time the parties entered into the agreement:

Q. (by Central's attorney): Before that time period [January of 2000], had Mr. Shoemaker ever informed you of the identity of Affhouse as you recall?

A. I don't believe when we entered into the working relationship in September or October that I knew who the developer/owner was. That's not unusual in our industry. I could not say that in November or December or January that I didn't have some contact that would indicate who the developer was.

A. At that time it wouldn't have been a concern to me.

Shoemaker also acknowledged that he failed to disclose the identity of the principal to Central at the time the transaction was conducted:

Q. You never told Mike Bates or Central Missouri Professional Services that you were an agent for Affhouse or any other undisclosed principal?

A. That's correct. I never did.

Q. Another note I wrote down was that the subject of Affhouse came up in your conversations with Mike Bates of Central Missouri Professional Services after he sent the bill to you in the year 2000?

A. The early part of the year, yes.

Q. All right. I think it was January 2000.

There was evidence from which the court could have concluded that the agent, Shoemaker, failed to disclose to Central that he was acting as agent and failed to disclose the identity of the principal, Affhouse, to Central at the time of the transaction. The fact that Central knew Shoemaker was an architect and not a developer is immaterial. The judgment holds Shoemaker liable only for the portion of the contract price attributable to services that Central rendered and billed before learning the identity of the owner/developer. We find no error in this judgment.

## Conclusion

The judgment is affirmed.

ULRICH and HOLLIGER, JJ., concur.